Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 943 | DATE | 5/21/2004 |
| CASE TITLE | S. Richard Van Horne, III, et al. vs. The Glen Falls Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/7/2004 at 10:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiffs' motion for partial summary judgment on count I of the amended complaint [23-1] is granted. Defendant's motion for summary judgment [24-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | MAY 24 2004 | 31 |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 5/21/2004 | |
| | | courtroom deputy's initials | | date mailed notice | |
| | IS | | | IS | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
MAY 2 4 2004

S. RICHARD VAN HORNE III and ) 
MARY M. VAN HORNE, )
)
        Plaintiff, ) Case No. 03 C 0943
)
v. ) Magistrate Judge
) Martin C. Ashman
THE GLEN FALLS INSURANCE )
COMPANY d/b/a ENCOMPASS )
INSURANCE (formerly known as )
CNA PERSONAL INSURANCE), )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, S. Richard Van Horne III and Mary M. Van Horne, filed a two-count complaint against Defendant, Encompass Insurance, alleging that Encompass failed to comply with Wisconsin's valued policy statute by refusing to pay the total policy limit on their homeowner's insurance after their house was damaged and determined to be a total loss. Count II seeks interest on the unpaid amount. Plaintiffs moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Encompass has also filed a motion for summary judgment on the same issues. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the following reasons, Plaintiffs' motion is granted and Defendant's motion is denied.

3|

## I. Background

### A. The Delvan Property

Plaintiffs, who primarily reside in Chicago, Illinois, are also the owners of property located at 2580 North Shore Drive, Delvan, Wisconsin (the "Delvan property"). Encompass issued insurance policy number US 152868385 covering the Delvan property, effective from August 14, 2001 through August 14, 2002. Plaintiffs also insure two properties in Illinois with Encompass. In May of 2002, Plaintiffs discovered water damage at the Delvan property which had caused substantial damage to the house and its contents. The water damage was not caused by any fault of Plaintiffs. Investigators agreed that the damage and resulting mold and mildew infestation was so extensive that it would be more cost effective to demolish the house and rebuild than to repair and reconstruct the existing structure. The house was a total loss.

Encompass paid Plaintiffs $384,000, the amount identified in the policy as the "Estimated Residence Value" for the house. Estimates to replace the house started at over $400,000.[1] With respect to personal property, Encompass paid Plaintiffs the actual cash value of $110,627.47 for the contents of the house. It notified Plaintiffs that they could submit documentation of the replacement cost of the contents within a certain amount of time in order to receive an additional amount of money.

---

[1] Neither party filed a response to its opponent's statement of material undisputed facts as required by Local Rule 56.1(b).

### B. The Insurance Contract

The insurance policy covering the Delvan property is a "Deluxe-Home" policy. The renewal policy coverage summary identifies a "Property Location Limit" equal to $768,000. (VH000002.)[2] The coverage summary provides that "Your Location Limit is 200% of the Estimated Residence Value of $384,000." (Id.) It further provides that "No more than 20% of the Property Location Limit shown above will be available to pay for other structures." (Id.) "Total loss" is defined as when "the cost to replace the covered real property is equal to or less than the cost of repairs plus the cost of any Additional Living Expense, Fair Rental Value, Building Ordinance Increased Costs and Debris Removal." (Emphasis from original removed; VH000008.)

The limit of liability for real property is set forth as follows:

Covered losses are settled on a replacement cost basis (without deduction for depreciation) subject to the following:

1. Payment will not exceed the smallest of:

   a. The amount that we could reasonably be expected to pay to have the property repaired to its condition immediately prior to loss;

   b. The actual cost to replace the real property or any parts of it; or

   c. The aggregate property limit shown in the Coverage Summary for the residence.

---

[2] Page references to the policy are identified by production number. (See Encompass Ins. Co.'s Stmt. of Undisputed Mat. Facts at Ex. B.)

2. If you have:

> a. Maintained Coverage on the real property at 100% of its full replacement cost by paying renewal premium to reflect the then current replacement cost. The current replacement cost of the real property will be based on the residential construction cost index provided to us by a major appraisal company; and
>
> b. Notified us within 90 days of the start of any alterations to the real property . . .;
>
> Then, if at the time of loss the residence value indicated in the Coverage Summary is less than the current replacement cost, we will: (VH000009)
>
> > a. Increase the residence value to equal the current replacement cost subject to a maximum of 125% of the residence value shown on the Coverage Summary. (VH000034.)
> >
> > b. Also increase the aggregate property limit by the same percentage applied to the residence value; (VH000009-10) and
> >
> > c. Adjust the policy premium . . . . (VH000010.)

4. If the replacement premises is not at the same location, covered losses will be settled on a replacement cost basis. We will pay no more than the dwelling replacement value shown in the Coverage Summary for equivalent construction and use as the original **residence premises.** (VH000041.)

The policy is further amended by the Wisconsin Amendment, which contains a limit of liability as follows:

> Whenever this policy insures real property which is owned and occupied by the *covered person* as a dwelling and the property is wholly destroyed, without the criminal fault of the *covered person* or assignee, the amount of loss shall be taken conclusively to be the residence value or dwelling value shown on the Coverage Summary.

(VH000034.) The Wisconsin Amendment provides that if any provision of the policy, including endorsements, is in conflict with a Wisconsin statute or rule it will be amended to conform to that statute or rule. (VH000040.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The only issue in front of the Court is the interpretation of Wisconsin's valued policy statute as applied to the Delvan property policy. There are no factual issues, and summary judgment is appropriate.

### B. The Valued Policy Statute

The Court has diversity jurisdiction over this matter. The parties agree that Wisconsin law applies. *See* Wis. Stat. § 632.09 (Wisconsin law governs insurance on property located in Wisconsin). The parties also agree that the loss of the residence on the Delvan property is a total loss and that the loss was not due to any fault of Plaintiffs. The Wisconsin valued policy statute governs insurance coverage in the event of a total loss:

> **Total loss.** Whenever any policy insures real property that is owned and occupied by the insured primarily as a **dwelling and the property** is wholly destroyed, without criminal fault on the part of

- 5 -

> the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be **the policy limits of the policy insuring the property.**

Wis. Stat. § 632.05(2) (emphasis added to text). The statute was written to further the public policy of preventing the over-insurance of property by owners (and the resulting tempting opportunity for arson) and the over-payment of premiums to insurance companies. *Gambrell v. Campbellsport Mut. Ins. Co.*, 177 N.W.2d 313, 315 (Wis. 1970). The statute also serves to "eliminate controversy as to the amount of loss by requiring the parties to agree upon the amount to be paid in the event of total destruction." *Fox v. Milwaukee Mechanics' Ins. Co.*, 246 N.W. 511, 512 (Wis. 1933). It thus acts as a contract for liquidated damages should the property be totally destroyed. *Id.*

Plaintiffs argue that the Property Location Limit of $768,000 in the Coverage Summary equals the "policy limits of the policy" adverted to in the valued policy statute. Alternatively, they argue that if the Property Location Limit is not the statutory policy limit, then the policy is ambiguous and should be construed in their favor compelling a finding that the policy limits equals the Property Location Limit. Defendants assert that by the plain language of the statute the "policy limits of the policy insuring the property" refer to the limits of the dwelling only. Furthermore, the valued policy statute applies only to real property. Because the Property Location Limit of $768,000 is an aggregate limit applying to both real and personal property, they contend that the Estimated Residence Value of $384,000 is the statutory policy limit applicable to the dwelling.

The construction of an insurance policy is a question of law to be decided by the court. *United States Fire Ins. Co. v. Ace Baking Co.*, 476 N.W.2d 280, 282 (Wis. Ct. App. 1991)

(quoting *Kaun v. Indus. Fire & Cas. Ins. Co.*, 436 N.W.2d 321, 323 (1989)). Because an insurance policy is construed to ascertain and effectuate the intent of the contracting parties, an unambiguous provision must be construed as it stands. *Id.* Under the rules of statutory construction, the court must give effect to the intent of the legislature in enacting the statute. *Drangstviet v. Auto-Owners Ins. Co.*, 536 N.W.2d 189, 190 (Wis. Ct. App. 1995). "When determining legislative intent, [the] court first examines the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous." *Id.* at 190-91. The Court finds that neither the policy nor the statute are ambiguous, and finds that the statutory "policy limits of the policy insuring the property" equal the Property Location Limit.

Plaintiffs would have the Court find that "insuring the property" identifies which policy is at issue, namely, any policy that insures real property used as a dwelling, such as the Delvan policy. Next, the phrase should be interpreted just as it stands, which is "the policy limits of the policy." They conclude that the "policy limits of the policy" is the Property Location Limit.

Encompass argues that "*the policy limits* of the policy *insuring the property*" means only the policy limits strictly applicable to the dwelling, because "the property" equals the dwelling. While the statute could have been written more clearly, such as "the policy limits of the dwelling," or "the limits of liability on the dwelling," this does not create an ambiguity. We find that in this case, even taking Encompass' interpretation of the statute, the statutory policy limits equal the Property Location Limit because that is the most that Plaintiffs can recover for the loss of the Delvan residence. It is the policy limits of the dwelling. Under the Real Property - Limit of Liability section of the policy, it is agreed that covered losses will be settled on a replacement cost basis, but the most the insured can collect is the "aggregate property limit shown in the

- 7 -

Coverage Summary for the residence." (VH000009.) This aggregate property limit is the Property Location Limit of $768,000. Thus, the "policy limits of the policy insuring the property" is the Property Location Limit.

As mentioned, Encompass argues that the policy limits of the policy insuring the property equal the Estimated Residence Value, a term that is not defined in the policy. However, the term is not ambiguous simply because it is not defined in the policy. *See United States Fire Ins. Co.*, 476 N.W.2d at 282. From the face of the policy and giving words their plain meaning, it is clear that the Estimated Residence Value is the tentative estimate of the worth of the Delvan residence. *See* Webster's II New Riverside University Dictionary 444, 1275 (1984). While "estimated worth" may sound like an amount agreed to by the parties before a total loss occurs, the policy does not give any indication that this tentative estimate is a limit of the policy or even a limit on coverage for the dwelling (which is what the statute requires). The Coverage Summary contains a column labeled "Limits" and the only limit found in that column is $768,000, the Property Location Limit.

We should note that Encompass points to page 1 of the Wisconsin Amendment to demonstrate that support for its position is found in the policy. In the Wisconsin Amendment, Encompass copied most of the Wisconsin valued policy statute, but created its own definition of the amount of loss as "the residence value or dwelling value shown on the Coverage Summary," (VH000034), instead of "the policy limits of the policy insuring the property." However, due to the public policy considerations behind the valued policy statute, Encompass and Plaintiffs are not allowed to modify the statute by the terms of Plaintiffs' policy. *See Gimbels Midwest, Inc. v. Northwestern Nat'l Ins. Co. of Milwaukee*, 240 N.W.2d 140, 145 (Wis. 1976); *see also*

- 8 -

VH000040 (if any provision of the policy is in conflict with Wisconsin law it will be amended to conform to that law). Effectively, the terms of the valued policy statute as written, not as modified by the parties, are incorporated into Plaintiffs' policy by default. *See Gambrell*, 177 N.W.2d at 317 (*quoting Reilly v. Franklin Ins. Co.*, 43 Wis. 449, 457 (1877)). The parties cannot agree that the amount of loss will be anything other than what the statute expressly requires: the policy limits of the policy insuring the property. We find that this is the Property Location Limit.

Encompass argues that the Property Location Limit cannot be the policy limit referred to in the statute because the Property Location Limit includes personal property coverage and the statute only applies to real property. The Court agrees that the Property Location Limit includes coverage for personal property. The policy discusses the terms relating to personal property at length, and we do not find persuasive Plaintiffs' argument that the entire contents of the Delvan property were covered only under the personal property limits of the other two residences. Additionally, the Property Location Limit does not apply solely to the Delvan residence, as Plaintiffs argue, because it also applies to "Other Structures" such as detached garages, (VH000002), living expenses, fair rental value, and debris removal, to name but a few coverages. (VH000013-17, as amended by the Wisconsin Amendment.)

The Court also agrees that the valued policy statute clearly applies to real property and in fact only applies to real property that is used as a dwelling by the insured. Wis. Stat. § 632.05(2) ("Whenever any policy insures *real property* that is owned and occupied by the insured primarily as a *dwelling* . . . .") (emphasis added); *Fox*, 246 N.W. at 512 ("The provisions of the valued policy law are special and apply only to real property . . . ."). Nevertheless, we disagree with Encompass' conclusion that the Property Location Limit, which under certain circumstances may

be the limit for personal property and other coverages, does not equal the statutory "policy limits of the policy insuring the property" of the dwelling. While the Property Location Limit is an aggregate limit, it is also the only limit on the face of the policy covering the dwelling. Plaintiffs can recover up to the Property Location Limit for the dwelling in certain circumstances. Plaintiffs are not seeking compensation under the statute for their personal property or even real property not used as a dwelling, which would be improper, they are only seeking to recover under the statute for their residence, which is covered by the statute.

This leads us to Encompass' next argument, namely that allowing Plaintiffs to recover the full Property Location Limit for the residence under the statute would lead to an absurd and unfair result. Plaintiffs have already been paid under the policy for personal property that was lost in the destruction of the house and they would recover in excess of the policy limits if they were also awarded the full Property Location Limit for the dwelling. To the contrary, the most that Plaintiffs can receive is the $768,000 Property Location Limit. Once this amount is reached, whether it be from damage to the dwelling as covered by the valued policy statute, or from other losses on the covered property, Plaintiff cannot receive any more money. *See Vogel v. Cincinnati Ins. Co.*, No. 95-C-452, 1997 WL 33284143, at *12-13 (E.D. Wis. Aug. 14, 1997). In *Vogel*, the coverage on the plaintiffs' dwelling was $60,000.[3] The court found that the valued policy statute applied to the total loss of the plaintiffs' house, and awarded them the $60,000 dwelling limit of liability. *Id.* However, because the limit of liability had been exhausted, the court found that the plaintiffs could not recover razing and debris removal expenses. *Id.* at *13 (but awarding costs

---

[3] The dwelling limit of liability was described on the plaintiff's endorsement as: "Coverage A - Dwelling $ 60,000" which was separate on the endorsement from "Coverage D - Loss of Use $ 18,000." 1997 WL 33284143, at *12.

for debris removal because the policy contained additional coverage for such expense when the limits had been reached). In other words, the Wisconsin valued policy statute contemplates results such as reached here for the public policy reasons stated above. The Court is not persuaded by Encompass' interpretation of the policy and finds that the "policy limits of the policy insuring the property" equal the Property Location Limit of $768,000.

### III. Conclusion

For the above reasons, we find that Plaintiffs are entitled to summary judgment. Accordingly, this Court grants summary judgment for Plaintiffs on Count I of the Amended Complaint. Defendant's motion for summary judgment is denied.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

Dated: May 21, 2004.

Copies have been mailed to:

| | |
|---|---|
| MICHAEL CHILDRESS, Esq.<br>JASON E. DeVORE, Esq.<br>Childress & Zbed, Ltd.<br>515 North State Street<br>Suite 2200<br>Chicago, IL 60610<br><br>Attorneys for Plaintiffs | TAMARA L. MEYER, Esq.<br>CHUNLIN LEONHARD, Esq.<br>ANNE W. MITCHELL, Esq.<br>Sonnenschein Nath & Rosenthal, LLP<br>8000 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL 60606<br><br>Attorneys for Defendant |